1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                        EASTERN DISTRICT OF CALIFORNIA

10
    VICTOR PARRA, Jr.                        1:06-cv-00955-LJO-SMS (PC)
11
                         Plaintiff,
12                                           ORDER DISMISSING COMPLAINT WITH
         v.                                  LEAVE TO AMEND
13
    COBBS, et. al.,                          (Doc. 1)
14
                         Defendants.
15  _____/

16

17  **I.    SCREENING ORDER**

18          Victor Parra, Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in

19  this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his complaint on July 24,

20  2006.

21          **A.     Screening Requirement**

22          The Court is required to screen complaints brought by prisoners seeking relief against a

23  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

25  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

26  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

27  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

28  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

                                             1

1  appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

2  1915(e)(2)(B)(ii).

3       A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

4  which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in

5  support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,

6  467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

7  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

8  complaint under this standard, the court must accept as true the allegations of the complaint in

9  question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the

10 pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.

11 Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

12      **B.**      **Summary of Plaintiff's Complaint**

13      Plaintiff is a state prisoner, currently incarcerated at R.J. Donovan Correctional Facility at

14 Rock Mountain ("RJD") at San Diego, California.  The acts he complains of occurred at

15 California Correctional Institution ("CCI") at Tehachapi, California.  Plaintiff names Chief

16 Deputy Warden ("CDW") J.L. Cobbs; Facility Captain M. Carrasco; Correctional Counselor II

17 ("CCII") J.D. Ramos; Correctional Officer ("C/O") J. Tyree; Assistant Warden ("AW") T.

18 Meadors; and the California Department of Corrections and Rehabilitations ("CDCR") as

19 defendants.  Plaintiff seeks declaratory and monetary damages.

20      Plaintiff alleges that:  upon arrival at CCI, on November 17, 2004, he was housed in the

21 Security Housing Unit ("SHU"); that he was to be released into the general population on

22 January 6, 2005, but that before he was released he was assaulted by other SHU inmates; he

23 received medical care for injuries sustained in the assault; C/O Tyree attempted an interview

24 regarding the incident, but Plaintiff refused to talk, even when offered placement in the Sensitive

25 Needs Yard ("SNY"); Plaintiff was then housed in the Administrative Segregation Unit ("Ad-

26 Seg"); in Ad-Seg, Plaintiff requested SNY placement from and was questioned by CCII Ramos;

27 Plaintiff's possible SNY placement was addressed at a January 13, 2005 classification hearing in

28 front of CDW Cobbs, Capt. Carrasco, Torres (not a named defendant), and AW Meadors;

Plaintiff was advised that he must cooperate to receive SNY placement, and that he would remain in Ad-Seg until he cooperated; on February 1, 2005, a 60 day Ad-Seg placement was approved to investigate Plaintiff's safety concerns; in March, CCII Ramos advised Plaintiff that the Ad-Seg placement approval was procedural and they could retain him in Ad-Seg beyond the 60 days; on March 29, 2005, Plaintiff was interviewed by CCII Ramos, but C/O Tyree recommended denial of SNY placement due to Plaintiff failing to cooperate; the next day, CDW Cobbs, Capt. Carrasco, CCII Ramos, and AW Meadors denied SNY placement, and retained Plaintiff in Ad-Seg until April 13, 2005, due to Plaintiff failing to cooperate; and on April 13, 2005, Plaintiff was transferred to, and subsequently suffered inmate assault at "Calipatria State Prison." (Plaintiff does not name any defendants and fails to allege prison staff wrongdoing at Calipatria.) Plaintiff further alleges that, while housed in CCI's Ad-Seg, he was subjected to unconstitutional conditions of confinement.

Plaintiff delineates sixteen causes of action – all of which are based on his retention and conditions of confinement in Ad-Seg at CCI.

### C.     Pleading Requirements

#### 1. *Federal Rule of Civil Procedure 8(a)*

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171

3

1   (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .

2   .'" (quoting <u>Fontana v. Haskin</u>, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

3   pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490

4   U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

5   essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>,

6   122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir.

7   1982)).

8                              **2.  *Federal Rule of Civil Procedure 18***

9               "The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to

10   relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

11   independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

12   against an opposing party.' Thus multiple claims against a single party are fine, but Claim A

13   against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

14   claims against different defendants belong in different suits, not only to prevent the sort of

15   morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

16   pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

17   frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

18   U.S.C. § 1915(g)." <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007).

19               Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply

20   with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are

21   dismissed therein as strikes such that he may be barred from filing in forma pauperis in the

22   future.

23                              **3.  *Linkage Requirement***

24               The Civil Rights Act under which this action was filed provides:

25                     Every person who, under color of [state law] . . . subjects, or causes
                       to be subjected, any citizen of the United States . . . to the
26                     deprivation of any rights, privileges, or immunities secured by the
                       Constitution . . . shall be liable to the party injured in an action at
27                     law, suit in equity, or other proper proceeding for redress.

28   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.  Plaintiff does not name the CDCR in his factual allegations.  If Plaintiff intends to pursue claims against the CDCR, he must link the CDCR to his factual allegations.

**D.**  **Claims for Relief**

**1. *Retention in Ad-Seg***

Plaintiff does not appear to contest his initial placement in Ad-Seg – which occurred immediately following his being attacked in the SHU.  However, he appears to allege that his 60+ day placement in Ad-Seg, for investigation of Plaintiff's safety concerns with the possibility of SNY placement, was inappropriately imposed as an impetus for him to turn informant.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  See Hewitt, 459 U.S. at 466-68.  With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

5

1    Plaintiff is not entitled to procedural due process protections in a vacuum.  In order to be

2    entitled under federal law to any procedural due process protections, Plaintiff must first have a

3    liberty interest at stake.  Plaintiff has alleged no facts that establish the existence of a liberty

4    interest in remaining free from Ad-Seg.  Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th

5    Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in

6    freedom from state action taken within sentence imposed and administrative segregation falls

7    within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted);

8    Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the

9    SHU was within range of confinement normally expected by inmates in relation to ordinary

10   incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from

11   confinement in the SHU) (quotations omitted).  Prisoners may be housed in Administrative

12   Segregation to protect them from other inmates, to protect other inmates from the segregated

13   prisoner, or pending investigation of disciplinary charges, transfer, or re-classification.  See

14   Hewitt v. Helms, 459 U.S. 460, 468 (1983) – overruled on other grounds.  Further, after the

15   prisoner has been placed in administrative segregation, prison officials must periodically review

16   the initial placement.  See Hewitt , 459 U.S. at 477, n.9; Toussaint v. McCarthy, 801 F.2d 1080,

17   1101 (9th Cir. 1986).  Annual review of the placement is insufficient, see Toussaint, 801 F.2d at

18   1101, but a court may not impose a 90-day review period where prison officials have suggested a

19   120-day review period, see Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1991).

20       Further, even if Plaintiff had a liberty interest in not being retained almost three months in

21   Ad-Seg, Plaintiff has alleged no facts that support his claim he was deprived of the procedural

22   due process protections he was due.  Plaintiff was informed of the reasons for his placement in

23   Ad-Seg.  Plaintiff did not state whether he was provided with periodic reviews subsequent to his

24   initial placement, but since he was only retained in Ad-Seg for approximately three months, his

25   placement would not yet have required a periodic review.

26       In summary, because he does not have a liberty interest in remaining free from Ad-Seg,

27   Plaintiff was not entitled to any procedural due process protections, and may not, therefore,

28   pursue a claim for deprivation of procedural due process.  Further, even if Plaintiff did have a

liberty interest in remaining free from Ad-Seg, Plaintiff failed to allege that he was not provided with all of the process he was entitled to under federal law. That defendants may have failed to comply with state regulations is not grounds for relief under section 1983 for deprivation of due process. Plaintiff is entitled to very limited due process protections under federal law with respect to placement in Ad-Seg. See Toussaint, 801 F.2d at 1100-01. Accordingly, the Court recommends that Plaintiff's due process claims regarding his placement and retention in CCI's Ad-Seg be dismissed for inability to state a claim upon which relief may be granted.

## 2. *Conditions of Confinement*

Plaintiff alleges that: he was placed in a unit in CCI's Ad-Seg where the roof to all cells on the second floor leaked water; that the cells were always exposed to freezing weather (of the mountains); prisoners are required to submit to unclothed body searches every time they exit their cells; all hobbies are prohibited; all self-help and religious programs are prohibited; and that food was given through a dirty food-port, was always cold and inedible, and was confiscated whenever Plaintiff's cell was searched.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth

1    Amendment for denying humane conditions of confinement only if he knows that inmates face a

2    substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.

3    Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked

4    knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to

5    the risk.  Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to

6    establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152

7    F.3d at 1128.

8          "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

9    Punishment Clause depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8

10   (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and

11   responsive to contemporary standards of decency."  Id. at 8 (quotations and citations omitted).

12   "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-

13   confinement claim."  Id. at 9 (citation omitted).  With respect to this type of claim, "[b]ecause

14   routine discomfort is part of the penalty that criminal offenders pay for their offenses against

15   society, only those deprivations denying the minimal civilized measure of life's necessities are

16   sufficiently grave to form the basis of an Eighth Amendment violation."  Id. (quotations and

17   citations omitted).  "[E]xtreme deprivations are required to make out a conditions-of-

18   confinement claim."  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and

19   citations omitted).

20         The Eighth Amendment guarantees adequate heating.  Keenan, 83 F.3d at 1091.

21   Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of

22   inmates and the sanitation of the penitentiary."  Keenan, 83 F.3d at 1090 (internal quotations and

23   citation omitted).  The denial of adequate clothing may, under certain circumstances, rise to the

24   level of an Eighth Amendment violation.  Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994).

25   Plaintiff fails to allege whether he was provided anything to accommodate for inclement external

26   weather conditions and whether the temperatures he was exposed to had any negative effects on

27   his health.

28         The conclusory allegation that plaintiff was deprived of hot food does not support a claim

8

for violation of the Eighth Amendment.  "The Eighth Amendment requires only that prisoners

receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing. ...

The fact that the food occasionally contains foreign objects or sometimes is served cold, while

unpleasant, does not amount to a constitutional deprivation."  See LeMaire v. Maass, 12 F.3d

1444, 1456 (9th Cir. 1993).  Plaintiff should allege what about the food in Ad-Seg (besides

temperature) made it inedible, and whether it caused any decline in his health.

Plaintiff is advised that temporarily unconstitutional conditions of confinement do not

rise to the level of constitutional violations.  See Anderson v. County of Kern 45 F.3d 1310 (9th

Cir. 1995) and Hoptowit v. Ray 682 F.2d 1237 (9th Cir. 1982).

The Court realizes that multiple factors, while insufficient alone, can be combined to state

a conditions of confinement claim.  However, in this case, as plead, Plaintiff fails to establish the

extreme deprivations that are required to state a conditions of confinement claim.  Thus, the

Court recommends that Plaintiff's claims regarding the conditions of his confinement, under the

Eighth Amendment, in CCI's Ad-Seg, be dismissed for failure to state a claim upon which relief

may be granted.

### 3.  *Failure to Protect*

Plaintiff alleges that the named defendants (by failing to approve him for SNY, or

endorse him to a SNY facility) are responsible for failing to protect him from the assault which

occurred after he was transferred out of CCI.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v.

Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v.

Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Prison officials have a duty to take reasonable steps to

protect inmates from physical abuse.  Hoptowit, 682 F.2d at 1250 (9th Cir. 1982); Farmer v.

Brennan, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must

establish that prison officials were deliberately indifferent to a substantial risk of serious harm to

1   the inmates's safety.  Farmer, 511 U.S. at 834.  The deliberate indifference standard involves an

2   objective and a subjective prong.  First, the alleged deprivation must be, in objective terms,

3   "sufficiently serious . . . ."  Farmer at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

4   Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or

5   safety."  Id. at 837.

6       "Being violently assaulted in prison is simply not 'part of the penalty that criminal

7   offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834, 114 S.Ct. at 1977

8   (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981));

9   see also Clemmons v. Bohannon, 956 F.2d 1523, 1531 (10th Cir.1992) ("Persons are sent to

10  prison as punishment, not for punishment.") (quoting Battle v. Anderson, 564 F.2d 388, 395

11  (10th Cir.1977)). More specifically, prison administrators have an affirmative duty "to take

12  reasonable steps to protect inmates from physical abuse."  Hoptowit v. Ray, 682 F.2d 1237, 1250

13  (9th Cir.1982).  The Ninth Circuit has held on numerous occasions that "prison administrators'

14  indifference to brutal behavior by guards toward inmates [is] sufficient to state an eighth

15  amendment [sic] claim."  Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir.1988), overruled on

16  other grounds by Koch v. Ricketts, 68 F.3d 1191 (9th Cir.1995)  Prison officials violate the

17  Eighth Amendment's proscription against cruel and unusual punishment if they act with

18  deliberate indifference to the threat of serious harm or injury to an inmate by another prisoner.

19  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986).

20      Plaintiff fails to establish that any of the defendants were deliberately indifferent to

21  serious risks to Plaintiff's safety.  Since Plaintiff would not participate in the interviews

22  subsequent to being attacked in the SHU, the Court fails to see: (1) how retaining Plaintiff in Ad-

23  Seg prior to his transfer was not related to ensuring Plaintiff's safety, and (2) how the named

24  defendants could have any responsibility to ensure that Plaintiff was not housed with certain

25  other inmates (warring inmate gangs, and the like) when transferred to a new facility.  Plaintiff

26  fails to state sufficient allegations to hold prison staff at one facility accountable for an attack

27  which occurred at another facility subsequent to Plaintiff's transfer.  Thus, the Court

28  recommends that Plaintiff's claims for failure to protect him from serious risk of harm regarding

1  his attack at a subsequent facility, be dismissed for failure to state a claim upon which relief may
2  be granted.

3          **4. *Inapplicable Causes of Action***

4          In his causes of action, Plaintiff delineates various legal terms that are inapplicable based
5  on his factual allegations – to wit: "Seizure" and "Infliction of Pain & Coercion."

6          Plaintiff delineates his first cause of action as "Fourth Amendment Seizure."  "[T]he
7  fourth amendment does not protect an inmate from the seizure and destruction of his property."
8  Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir. 1989).  "This does not mean a prisoner is without
9  redress; it simply means a prisoner's form of redress is through the fifth and fourteenth
10 amendments."  Id.  All of Plaintiff's allegations under the first cause action relate to his
11 placement and retention in Ad-Seg, which were previously analyzed herein under the procedural
12 due process clause.

13         Plaintiff delineates his second cause of action as "Fourteenth and Eighth Amendment
14 Intentional Infliction of Pain – Coercion."  "What is necessary to show sufficient harm for
15 purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends
16 upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "The objective
17 component of an Eighth Amendment claim is . . . contextual and responsive to contemporary
18 standards of decency."  Id. (internal quotation marks and citations omitted).  The malicious and
19 sadistic use of force to cause harm always violates contemporary standards of decency, regardless
20 of whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623,
21 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of
22 force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives
23 rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and
24 unusual punishments necessarily excludes from constitutional recognition de minimis uses of
25 physical force, provided that the use of force is not of a sort 'repugnant to the conscience of
26 mankind."  Id. at 9-10 (internal quotations marks and citations omitted).

27         "[W]henever prison officials stand accused of using excessive physical force in violation
28 of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

11

1   applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

2   cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it

3   may also be proper to evaluate the need for application of force, the relationship between that

4   need and the amount of force used, the threat reasonably perceived by the responsible officials,

5   and any efforts made to temper the severity of a forceful response." Id. (internal quotation

6   marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth

7   Amendment inquiry, but does not end it." Id.

8          The only factual allegations Plaintiff makes under his second cause of action relate to the

9   conditions of his confinement, which have been previously addressed.  Plaintiff fails to allege

10  any facts to support the use of force, or physical infliction of pain on his person by anyone.  Thus,

11  the Court recommends that Plaintiff's claims for intentional infliction of pain and coercion, be

12  dismissed for failure to state a claim upon which relief may be granted.

13                      **5.  *State Law Claims***

14         Plaintiff's 7th through 16th causes of action delineate state law claims.

15         Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

16  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

17  action within such original jurisdiction that they form part of the same case or controversy under

18  Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

19  1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

20  discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district

21  court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .

22  the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

23  1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before

24  trial, . . . the state claims should be dismissed as well." United Mine Workers of America v.

25  Gibbs, 383 U.S. 715, 726 (1966).

26         Because Plaintiff may be able to state a claims for relief under section 1983, the Court

27  reserves discretion to exercise supplemental jurisdiction over and to address Plaintiff's state law

28  claims after Plaintiff files his amended complaint so as to allow Plaintiff opportunity to state

1  cognizable claims for relief under section 1983.

2  **II.   CONCLUSION**

3        For the reasons set forth above, Plaintiff's complaint is dismissed, with leave to file an

4  amended complaint within thirty days.  If Plaintiff needs an extension of time to comply with this

5  order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the

6  date of service of this order.

7        Plaintiff must demonstrate in his complaint how the conditions complained of have

8  resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227

9  (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is

10  involved.  There can be no liability under section 1983 unless there is some affirmative link or

11  connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423

12  U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588

13  F.2d 740, 743 (9th Cir. 1978).

14        Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to

15  relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

16  independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

17  against an opposing party.'  Thus, multiple claims against a single party are fine, but Claim A

18  against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

19  claims against different defendants belong in different suits, not only to prevent the sort of

20  morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

21  pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

22  frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

23  U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

24        Plaintiff is advised that it is inappropriate to attach exhibits to a complaint.  See Rule 8,

25  Federal Rules of Civil Procedure.  Further, the Court cannot serve as a repository for the parties'

26  evidence.  Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.)

27  should not be submitted until the course of litigation brings the evidence into question (for

28  example, on a motion for summary judgment, at trial, or when requested by the court).   At this

13

point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief.  Thus, in amending his complaint, Plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Finally, Plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1.  Plaintiff's complaint is dismissed, with leave to amend;

2.  The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.  Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order; and

4.  If Plaintiff fails to comply with this order, this action will be dismissed for failure/inability to state a claim.

IT IS SO ORDERED.

**Dated:    June 26, 2008**                    /s/ **Sandra M. Snyder**
                                                     UNITED STATES MAGISTRATE JUDGE